UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
JEROME MARTIN,

        Petitioner,               **MEMORANDUM & ORDER**

  - against -                08-CV-452 (KAM)

UNITED STATES OF AMERICA,

        Respondent.
---------------------------------------X
**MATSUMOTO, United States District Judge:**

      On January 28, 2008, Jerome Martin ("Martin"),

proceeding *pro se*,[1] filed a motion pursuant to 28 U.S.C. § 2255

to vacate, set aside, or correct his sentence based on the

alleged ineffective assistance of his former counsel, Donald

duBoulay, Esq. ("duBoulay").  Martin moved to amend his petition

on October 20, 2008, on August 16, 2010, and again on October

25, 2011.  Martin also moved for expansion of the record, an

evidentiary hearing, and the appointment of counsel.  For the

reasons set forth herein, Martin's motions to amend are granted,

his motion for *habeas corpus* relief is dismissed, and his

remaining motions for expansion of the record, an evidentiary

hearing, and the appointment of counsel are denied.

---

[1] The court is mindful that a *pro se* pleading is held to less stringent
standards than more formal pleadings drafted by attorneys. *Estelle v.
Gamble*, 429 U.S. 97, 106 (1976).  Thus, a *pro se* motion for *habeas corpus*
relief should be construed liberally and with a lenient eye. *Williams v.
Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983).  Because petitioner is
proceeding *pro se* in his application for *habeas* relief, the court will accord
his motion the liberal construction intended for *pro se* litigants.

**BACKGROUND**

## I.    Martin's Conviction and Sentence

The charges against Martin stemmed from his activities as one of the leaders of a violent narcotics distribution organization that was based in Brooklyn and operated in several other locations on the East Coast. (Case No. 03-CR-795 (S-2)(DGT), Presentence Investigation Report, dated 11/17/2006 ("PSR") ¶ 5.)[2]  Between approximately January 1994 and August 2004, Martin managed the organization's cocaine distribution in Brooklyn and Rhode Island, and assisted in the distribution of crack cocaine to other areas where the organization sold narcotics. (*Id.* ¶¶ 5, 40.)  Members of the organization engaged in acts of violence related to their narcotics distribution, including assault, kidnapping, murder, attempted murder, and intimidation of witnesses. (*Id.* ¶ 5.)

On December 16, 2005, Martin was arraigned in the District Court for the Eastern District of New York pursuant to a thirteen-count second superseding indictment. (*Id.* ¶ 40; *see* Case No. 03-CR-795(S-2)(DGT), ECF No. 202, Arraignment as to Jerome Martin, dated 12/16/2005; Case No. 03-CR-795(S-2)(DGT),

---

[2] The Presentence Investigation Report prepared for Martin's sentencing on the instant offense referred to the criminal organization as the "Martin Family Crew" because it was made up of several members of Martin's family. (*See* PSR ¶ 5.)  However, Martin's sentencing memorandum insisted that "there was no unified 'Martin Family Crew' of which Jerome was a member or leader . . . ." (Case No. 03-CR-795(S-2)(DGT), ECF No. 297, Letter from Donald D. DuBoulay, Esq. to the Honorable David G. Trager, dated 4/17/2007 at 4.)

ECF No. 153, Sealed Superseding Indictment ("Ind't"); Case No.
03-CR-795(S-2)(DGT), ECF No. 201, Unsealing Order, dated
12/27/2005.)  On July 7, 2006, the government filed a Prior
Felony Information pursuant to 21 U.S.C. § 851, charging that on
July 8, 1998, Martin had been convicted in South Carolina of a
felony drug offense, specifically, conspiracy to violate South
Carolina narcotics and controlled substances laws, in violation
of the Code of Laws of South Carolina § 44-53-370.  (Case No.
03-CR-795(S-2)(DGT), ECF No. 263, Prior Felony Information,
filed 7/7/2006, at 1.)

On July 10, 2006, Martin pled guilty, pursuant to a
plea agreement, to distribution and possession with intent to
distribute cocaine base, in violation of 21 U.S.C.
§ 841(b)(1)(A)(iii).  (*See* Case No. 03-CR-795 (S-2)(DGT), ECF
No. 265, Minute Entry dated 7/10/2006; Case No. 03-CR-795 (S-
2)(DGT), ECF No. 295, Transcript of Pleadings as to Jerome
Martin held on 7/10/2006 ("Plea Tr.") at 16-18; Case No. 03-CR-
795 (S-2)(DGT), Plea Agreement ("Plea Agmt.") ¶ 1; Case No. 03-
CR-795 (S-2)(DGT), ECF No. 153, Ind't ¶ 48.)  In his plea
agreement, Martin stipulated to the U.S. Sentencing Guidelines
Manual ("Guidelines" or "U.S.S.G.") calculation, which estimated
that his adjusted offense level was 42, and to the facts
supporting that calculation.  (Plea Agmt. ¶ 2.)  Further, Martin
and the government agreed that if Martin pled guilty by a

certain date and if certain covered defendants also pled guilty,
Martin's offense level would be reduced to 40, which carried a
range of imprisonment of 360 months to life, assuming that
Martin's Criminal History Category was VI. (*Id.* ¶ 2.) Martin
agreed "not to file an appeal or otherwise challenge the
conviction or sentence, including by petition pursuant to 28
U.S.C. § 2255, in the event that the Court imposes a term of
imprisonment of life or below." (*Id.* ¶ 4.) Martin also
stipulated in his plea agreement that he had a prior conviction
for a felony drug offense and that his sentence would be
calculated based on a drug quantity and type of at least 1.5
kilograms of cocaine base. (*Id.* ¶ 2.)

During Martin's plea hearing on July 10, 2006, the
court placed Martin under oath and verified his competence to
plead guilty. (*See* Plea Tr. at 4-5.) The court showed Martin
the plea agreement and confirmed that Martin had read it,
discussed it with counsel, and signed it. (*See id.* at 10-11.)

The prosecutor then reviewed the penalties and
advisory Guidelines calculations that would apply to Martin
pursuant to his guilty plea. In particular, the prosecutor
noted that because of the Prior Felony Information filed by the
government, the minimum term of imprisonment was 20 years. (*Id.*
at 11-12.) The prosecutor further stated that, pursuant to the
plea agreement, Martin agreed not to appeal or challenge his

sentence in the event the court imposed a term of imprisonment of life or below. (*Id.* at 13.) Judge Trager confirmed that Martin understood that this wavier of his rights to challenge his sentence "would apply essentially to any sentence." (*Id.* at 14.)

Next, the prosecutor noted during the plea hearing that Martin stipulated in the plea agreement that he had a prior conviction for a felony drug offense, as stated in the Prior Felony Information, and that his sentence would be calculated based on a quantity of 1.5 kilograms of cocaine base. (*Id.* at 14-15.) When asked by Judge Trager if the prosecutor's statement was correct, Martin answered, "Yes, sir." (*Id.* at 15.) Further, the prosecutor stated that if the case were to proceed to trial, "the government would prove the defendant conspired, agreed with others, to distribute crack cocaine, cocaine base in an amount exceeding 50 grams, in fact an amount exceeding 1.5 kilos . . . ." (*Id.* at 16.) The court confirmed with Martin that the prosecutor's statement was correct. (*See id.* at 16-17.) At the conclusion of the colloquy, the court accepted Martin's guilty plea. (*Id.* at 18.)

Prior to sentencing, Martin's court-appointed counsel, Donald duBoulay, Esq. ("duBoulay") submitted a letter to the court, requesting a downward departure from the advisory Guidelines range because the offense conduct allegedly

"include[d] convictions [in Rhode Island and South Carolina] for which [Martin had] already served a sentence (and which [were] used to compute his base offense level)." (Case No. 03-CR-795(S-2)(DGT), ECF No. 297, Letter from Donald D. duBoulay, Esq. to The Honorable David G. Trager, dated 4/17/2007 ("Sentencing Mem.") at 4.) Further, at the sentencing hearing on April 18, 2007, duBoulay requested that Martin be sentenced only to the mandatory minimum of 20 years' imprisonment and that Martin receive credit against his federal sentence for the 30 months' imprisonment he had already served for the state felony drug offense that was the basis for the Prior Felony Information. (Case No. 03-CR-795(S-2)(DGT), Transcript of Sentencing as to Jerome Martin held on 4/18/2007 ("Sentencing Tr.") at 5, 13, 20.) The court imposed the mandatory minimum sentence of 240 months, but declined to give Martin credit for his prior discharged state sentences. (*Id.* at 18-20.)

## II. Martin's Pending Motions

On January 28, 2008, Martin filed a motion for *habeas corpus* relief, pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel by duBoulay during and after sentencing. (Case No. 08-CV-452, ECF No. 1, Petition ("Pet.") at 4-5.)[3] In particular, Martin faults duBoulay for failing to

---

[3] The page numbers referred to herein are the page numbers automatically assigned by the court's electronic case filing system.

challenge or appeal (i) the court's refusal to credit Martin's
discharged terms of state imprisonment in Rhode Island and South
Carolina toward his federal sentence, (*id.* at 10); and (ii) the
court's use of Martin's prior conviction in South Carolina for a
drug offense as the basis for a sentencing enhancement, (*id.* at
14).

By motion filed on October 20, 2008, Martin sought to
amend his claims. In his first motion to amend, Martin asserts
that duBoulay was also ineffective for failing to challenge the
documents on which the court relied in concluding that Martin's
prior drug offense conviction in South Carolina was for a felony
and that a sentence enhancement was therefore warranted. (Case
No. 08-CV-452, ECF No. 7, Motion to Amend Petitioner's § 2255
Petition Pursuant to Federal Rules of Civil Procedure Rule
15(C)(1)(B), filed 10/20/2008 ("Pet'r First Mot. to Amend") at
3.)

On October 20, 2008, the government opposed Martin's
petition. (*See* Case No. 08-CV-452, ECF No. 5, Memorandum in
Opposition, dated 10/20/2008 ("Gov't Opp.").) Martin filed a
traverse on November 3, 2008. (*See* Case No. 08-CV-452, ECF No.
8, Petitioner Martin's Traverse, filed 11/3/2008 ("Pet'r
Traverse").) On August 10, 2009, pursuant to a court order,
duBoulay filed an affidavit responding to Martin's allegations
of ineffective assistance of counsel. (*See* Case No. 08-CV-452,

ECF No. 11, Affidavit/Affirmation of Donald D. duBoulay, Esq., dated 8/10/2009 ("duBoulay Aff."); *see also* Case No. 08-CV-452, ECF No. 9, Order dated 7/1/2009.)

On July 14, 2009, Martin filed a motion to expand the record, pursuant to Rule 7(a) of the Rules Governing 2255 Proceedings for the United States District Courts ("Rules Governing 2255 Proceedings"). (*See* Case No. 08-CV-452, ECF No. 10, filed 7/14/2009 ("Pet'r Mot. to Expand").) The government opposed Martin's motion to expand the record on April 18, 2010. (Case No. 08-CV-452, ECF No. 13, Letter to the Honorable Judge Trager, dated 4/18/2010.) Martin responded by letter dated April 25, 2010. (Case No. 08-CV-452, ECF No. 15, Letter filed 4/30/10 from Jerome Martin to Judge Trager.)

On August 16, 2010, Martin filed a second motion to amend his petition, asserting that he is entitled to be resentenced in light of the Fair Sentencing Act of 2010, pursuant to which the penalties for offenses involving crack cocaine were amended. (*See* Case No. 08-CV-452, ECF No. 16, Motion to Amend Petitioner's § 2255 Petition Pursuant to Federal Rules of Civil Procedure, Rule 15(C)(2)(D), filed 8/16/2010 ("Pet'r Second Mot. to Amend").) The government opposed the motion by letter dated August 18, 2010. (*See* Case No. 08-CV-452, ECF No. 17, Memorandum in Opposition, dated 8/18/2010.)

On September 6, 2011, Martin filed a motion for appointment of counsel, pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings, seeking an evidentiary hearing and counsel to be appointed therefor.[4]  (*See* Case No. 08-CV-452, ECF No. 22, Motion for Appointment of Counsel, filed 9/6/2011 ("Pet'r Mot. to Appoint Counsel").)

On October 25, 2011, Martin filed a third motion to amend his petition, arguing once again that the document on which the court relied in enhancing his sentence was ambiguous, and thus insufficient to prove that his prior conviction was for a felony.  (Case No. 08-CV-452, ECF No. 24, Motion to Amend, Petitioner's § 2255 Petition Pursuant to Federal Rules of Civil Procedure Rule 15(C)(1)(B), filed 10/25/2011 ("Pet'r Third Mot. to Amend") at 3-4.)  In addition, Martin's third motion to amend claims that he is entitled to relief based on the district court's alleged failure to ask Martin whether he was previously convicted as alleged in the Prior Felony Information, and failure to warn Martin of the consequences of not challenging the Prior Felony Information, as required by 21 U.S.C. § 851(b). (*Id.* at 4-5.)

---

[4] The court notes that Martin cites Federal Rule of Civil Procedure 8(c), which is inapplicable here.  Instead, the court will construe his motion liberally as brought pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings, which provides for the appointment of counsel in the event that an evidentiary hearing is held on the motion for *habeas* relief.

<u>**DISCUSSION**</u>

**I.   Motion Pursuant to 28 U.S.C. § 2255**

**A.   Legal Standard**

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Collateral relief from a final criminal judgment is available only "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

A motion pursuant to Section 2255 must be filed in the district court "which imposed the sentence" being challenged. 28 U.S.C. § 2255(a); *Ndoromo v. Holder*, No. 09-CV-5686, 2010 U.S. Dist. LEXIS 4631, at *2 (E.D.N.Y. Jan. 20, 2010).[5]  Further,

---

[5] The court notes that Martin properly filed the instant motion with United States District Judge David Trager, who imposed Martin's sentence, but that the case was subsequently reassigned to this court. (*See* Case No. 08-CV-452, Docket Entry dated 1/28/2011.)

Section 2255 "may not be used as a substitute for a direct appeal." *Marone v. United States,* 10 F.3d 65, 67 (2d Cir. 1993) (citing *United States v. Frady,* 456 U.S. 152, 165 (1982)). "[A] claim 'may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review.'" *Mora v. United States*, No. 08-CV-3826, 2010 U.S. Dist. LEXIS 64838, at *4 (S.D.N.Y. June 29, 2010) (dismissing as procedurally barred petitioner's claims that, *inter alia*, his sentence was calculated incorrectly and his federal and state sentences should run concurrently because petitioner did not raise those claims on direct review) (quoting *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007)). An exception to this general rule is that "a petitioner may bring an ineffective assistance of counsel claim [in a motion pursuant to 28 U.S.C. § 2255] whether or not the petitioner could have raised the claim on direct appeal." *Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010) (citing *Massaro v. United States*, 538 U.S. 500, 509 (2003)).

B.   **Timeliness**

   i.   **Timeliness of Martin's January 28, 2008 Motion Pursuant to 28 U.S.C. § 2255**

   A motion pursuant to 28 U.S.C. § 2255 must be filed within one year of the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). If the defendant does

11

not appeal his conviction, the judgment of conviction becomes final the day after the period for appeal expires. *See Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000). At the time of Martin's sentencing, an appeal in a criminal case must have been filed within ten business days of the entry of judgment. Fed. R. App. P. 4(b)(1)(a) (2006).[6] Thus, where the defendant does not appeal his conviction, the judgment of conviction becomes final eleven business days after the entry of judgment.

Here, the judgment of conviction was entered on June 6, 2007. (*See* Case No. 03-CR-795, ECF No. 313, Judgment as to Jerome Martin, dated 6/6/2007.) Martin did not file a direct appeal. Thus, the statute of limitations period in effect at the time began to run on June 21, 2007, the date on which the judgment of conviction became final. Because Martin filed the instant motion on January 28, 2008, well within the one-year statute of limitations, it is timely.

---

[6] A 2009 amendment to the Federal Rules of Appellate procedure, effective December 1, 2009, extended the time to appeal a final judgment from 10 to 14 days and removed the provision that excluded weekends and holidays from the count. *See* Fed. R. App. P. 4, Notes of Advisory Committee on 2009 Amendments ("The times set in the former rule at 10 days have been revised to 14 days."); Fed. R. App. P. 26, Notes of Advisory Committee on 2009 Amendments ("Under new subdivision (a)(1), all deadlines stated in days (no matter the length) are computed in the same way. The day of the event that triggers the deadline is not counted. All other days – including intermediate Saturdays, Sundays, and legal holidays – are counted, with only one exception: if the period ends on a Saturday, Sunday, or legal holiday, then the deadline falls on the next day that is not a Saturday, Sunday, or legal holiday.").

### ii.    Timeliness of Martin's Motions to Amend the Petition

On October 28, 2008, after the one-year limitations period had expired, Martin filed his first motion to amend the petition.  On August 16, 2010 and October 25, 2011, respectively, Martin filed second and third motions to amend. Any claim raised for the first time in an amended Section 2255 motion filed outside the limitations period must "relate back" to the initial motion in order to be timely under Federal Rule of Civil Procedure 15.  *Hewitt v. Artuz*, No. 99-CV-5021, 2008 U.S. Dist. LEXIS 59547, at *13-14 (E.D.N.Y. Aug. 4, 2008); *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (proposed amendment relates back only when it arises out of the same factual conduct forming the basis of the original pleading).  To relate back, the amendment must "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  In the *habeas* context, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).

Here, Martin's first amended claim is tied to the same core of operative facts asserted in his original petition.

Whereas the original petition asserts, *inter alia*, that duBoulay was ineffective by failing to argue that Martin's prior offense in South Carolina was not a felony, the first motion to amend argues that duBoulay should have challenged the document used to establish that the prior offense was a felony. Similarly, in Martin's third motion to amend, he argues once again that the document on which the court relied failed to show that his prior conviction was for a felony because it did not refer to the specific subsection of the South Carolina law pursuant to which he was convicted, and that duBoulay was ineffective for failing to challenge it. (*See* Pet'r Third Mot. to Amend at 3-4.) All of these claims arise from duBoulay's alleged failure to challenge the validity of the Prior Felony Information during and after sentencing. They differ only in that they cite different ways in which duBoulay purportedly should have attacked the Prior Felony Information and the resulting enhancement of Martin's sentence. The claim in Martin's first motion to amend and the first claim in his third motion to amend thus relate back and are timely. Accordingly, Martin's petition is deemed amended to include the additional claim that duBoulay was ineffective for failure to argue that his South Carolina offense was not a felony, and it will be considered below.

While less clear, the second claim in Martin's third motion to amend also arguably arose out of the same core of

operative facts set out in his original pleading.  Specifically,
Martin asserts that the sentencing court erred in enhancing his
sentence pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851 because
it failed to follow the procedures set forth in Section 851(b).
(*See* Pet'r Third Mot. to Amend at 4-5.)  As this claim generally
concerns the validity of the Prior Felony Information and the
resulting enhancement of his sentence, the court finds it
relates back to the original pleading and will consider this
claim, as well.

Martin's second motion to amend, seeking resentencing
in light of the Fair Sentencing Act of 2010, which changed the
amount of crack cocaine that triggers a mandatory minimum
sentence pursuant to 21 U.S.C. § 841(b), does not arise out of
the same set of operative facts as his original petition and
does not allege ineffective assistance of counsel.  Thus, it
cannot be said to relate back to the original claim.
Nonetheless, despite his styling of this submission as a "motion
to amend" the Section 2255 petition, Martin's request to be
resentenced is more appropriately construed as an application to
modify his term of imprisonment pursuant to 18 U.S.C. § 3582(c),
as discussed below.  *See United States v. Miller*, Nos. 92-CR-91,
99-CV-3346, 2010 U.S. Dist. LEXIS 31006, at *10-11 (E.D.N.Y.
Mar. 30, 2010) (treating request to "amend" Section 2255
petition as application for resentencing pursuant to 18 U.S.C.

§ 3582(c)).  As such, Martin's second amended petition does not trigger relation back concerns.  *See id.* at *11.

**C.    Waiver of Appellate Rights**

A defendant's waiver of his right to appeal or collaterally attack a sentence within or below an established Guidelines range is generally enforceable.  *United States v. Fisher*, 232 F.3d 301, 303 (2d Cir. 2000).  Such a waiver, however, "must always be knowingly, voluntarily, and competently provided by the defendant."  *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *accord United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam) ("In no circumstances, however, may a defendant who has secured the benefit of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement.  Such a remedy would render the plea bargaining process and the resulting agreement meaningless.").

In his plea agreement, Martin expressly agreed not to appeal or otherwise challenge the sentence as long as the term of imprisonment was life or below.  (*See* Plea Agmt. ¶ 4.)  The government argues that Martin's motion challenging duBoulay's failure to appeal his sentence is barred by the waiver in his plea agreement.  (*See* Gov't Opp. at 2.)  Martin, on the other hand, alleges that any waiver of his right to appeal was not

knowing or voluntary because the court did not specifically question him about the waiver provision in the plea agreement, and he did not fully understand the consequences of the waiver. (*See* Pet'r Traverse at 3-4.)

Martin's claim that the court did not specifically question him about the waiver provision is inconsistent with the record. Indeed, during the plea hearing, the government described the nature of the waiver provision and the court confirmed that Martin understood its consequences:

> MR. HARRISON: [. . .] [I]n paragraph four on page four of the agreement, the defendant has agreed not to file an appeal or otherwise challenge the conviction or sentence in the event the court imposes a term of imprisonment of life or below.
>
> [. . .]
>
> THE COURT: The waiver would apply essentially to any sentence; is that a fair statement?
>
> MR. HARRISON: Yes.
>
> THE COURT: You understand that, Mr. Martin?
>
> MARTIN: Yes, sir.
>
> THE COURT: Do you have any questions you would like to ask me about the charge, your rights, anything else related to this matter that we've discussed up to this point that may not be clear to you?
>
> MARTIN: No, sir.
>
> THE COURT: Do you understand if the sentence is more severe than you expect, or

> hope for, you will still be bound by this
> plea, have no right to withdraw it?
>
> MARTIN: Yes, sir.

(Plea Tr. at 13-14.) The questions posed to Martin clearly

followed and were directly related to the government's

description of the waiver provision in Martin's plea agreement.

Thus, Martin's claim that the court failed to question him about

the waiver provision fails.

In support of Martin's argument that he misunderstood

the waiver provision, he points to the court's statement during

the plea hearing that if Martin were to plead guilty, "[t]here

will be no trial in this case and there will be no appeal on the

question of whether you did or did not commit this crime. The

only thing you could appeal would be if you thought I did not

properly follow the law in sentencing you." (Plea Tr. at 9-10.)

Martin alleges that this statement led him to believe he

retained the right to appeal his sentence if he believed it was

"illegal." (Pet'r Traverse at 4.) As the record makes clear,

however, the court made this statement at the beginning of the

plea hearing, before the plea agreement was mentioned or its

terms, including the waiver provision, were explained to Martin.

As discussed above, the government subsequently described in

detail the waiver provision and Martin confirmed that he

understood he could not appeal or challenge any sentence,

consistent with the plea agreement, of life imprisonment or
below.  (*See* Plea Tr. at 14.)  Accordingly, because Martin
knowingly and voluntarily waived his right to appeal or
challenge his sentence, duBoulay was not ineffective in failing
to appeal it and Martin's motion must be dismissed.

   **D.   Alleged Ineffective Assistance of Counsel**

      Even if Martin had not waived his right to appeal or
collaterally challenge his sentence, his petition would
nevertheless be denied because his claims of ineffective
assistance of counsel fail on the merits.

      To establish ineffective assistance of counsel, a
petitioner must show that (1) "counsel's performance was
deficient," meaning that the representation "fell below an
objective standard of reasonableness" under "prevailing
professional norms" and (2) that "the deficient performance
prejudiced the defense" in that there is a "reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."  *Strickland
v. Washington*, 466 U.S. 668, 687, 688, 694 (1984); *accord United
States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008).  Where, as
here, a petitioner challenges his sentence, "the petitioner must
show that but for counsel's ineffectiveness, there is a
reasonable probability that the sentence imposed would have been
different."  *Ramirez v. United States*, No. 09 Civ. 4397, 2011

U.S. Dist. LEXIS 48783, at *22 (S.D.N.Y. May 6, 2011) (citing

*United States v. Workman*, 110 F.3d 915, 920 (2d Cir. 1997)). In

evaluating counsel's performance, the court "must indulge a

strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance." *Strickland*, 466

U.S. at 689. The petitioner bears the burden of proving that

both *Strickland* prongs are met. *Byrd v. Evans*, 420 F. App'x 28,

30 (2d Cir. 2011) (citing *Kimmelman v. Morrison*, 477 U.S. 365,

381 (1986)).

> ### i. duBoulay's Failure to Appeal the Court's Refusal to Adjust Downward Martin's Sentence To Account For His Discharged State Sentences

Martin first claims that duBoulay was ineffective for

not appealing the district court's refusal to adjust downward

Martin's federal sentence to account for his prior terms of

imprisonment in Rhode Island and South Carolina. (Pet. at 10.)[7]

Martin contends that duBoulay knew or should have known that the

district court erred at sentencing by not reducing his sentence

pursuant to advisory Guidelines sections 5G1.3(b) and/or 5K2.23.

---

[7] In his Traverse, Martin appears to allege that, in addition to failing to appeal the court's refusal to adjust his sentence pursuant to U.S. Sentencing Guidelines Manual section 5G1.3(b) and/or section 5K2.23, duBoulay also failed to present this argument properly to the sentencing court. (*See* Pet'r Traverse at 4-7.) Martin's claim fails because the record clearly shows that duBoulay *did* request, both in his sentencing memorandum and on the record at the sentencing hearing, that the court depart from the Guidelines range to account for the time Martin spent in custody for his Rhode Island and South Carolina convictions. (*See* Sentencing Mem. at 4-5; Sentencing Tr. at 13.) Nevertheless, even if duBoulay had not adequately raised this argument, Martin cannot show that he suffered prejudice because he was not entitled to any such adjustment.

(*Id.; see also* Pet'r Traverse at 4-7.)  Because duBoulay presented these arguments to the sentencing court, which properly rejected them, Martin has failed to demonstrate that duBoulay's failure to appeal constituted ineffective assistance of counsel.

Section 5G1.3(b) of the Guidelines ("Section 5G1.3(b)") provides that if a defendant is subject to an undischarged term of imprisonment for an offense that is "relevant conduct to the instant offense," and the other offense "was the basis for an increase in the offense level for the instant offense," then the court must (1) "adjust the sentence [for the instant offense] for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons;" and (2) impose "the sentence for the instant offense . . . to run concurrently to the remainder of the undischarged term of imprisonment."  U.S.S.G. § 5G1.3(b).  The court is required to adjust downward a defendant's sentence pursuant to Section 5G1.3(b) only where the defendant is subject to an undischarged term of imprisonment.  *United States v. Wint*, 142 F. App'x 11, 13 (2d Cir. 2005) (citing *United States v. Labeille-Soto*, 163

F.3d 93, 99 (2d Cir. 1998)); *accord United States v. Uzoefune*, 334 F. App'x 360, 363 (2d Cir. 2009).[8]

Section 5K2.23 of the Guidelines ("Section 5K2.23") provides authority for a discretionary downward adjustment if "the defendant has (1) completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 . . . would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense." It also states that "any departure should be fashioned to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5K2.23.

Based on the record before the court, it is clear that Martin was not entitled to a mandatory downward adjustment to his sentence pursuant to Section 5G1.3(b) because his prior sentences were not "undischarged" at the time of sentencing for the instant offense. On April 10, 1995, Martin was sentenced by a Rhode Island state court to 13 years' custody, with 10 years suspended, and on July 8, 1998, he was sentenced by a South

---

[8] Application note 4 to Section 5G1.3 provides that where the defendant's prior term of imprisonment has been discharged, a downward adjustment to the defendant's sentence is discretionary:

> In the case of a discharged term of imprisonment, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection [5G1.3](b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. *See* § 5K2.23 (Discharged Terms of Imprisonment).

U.S.S.G. § 5G1.3 cmt. n.4.

Carolina state court to seven and a half years' suspended custody. (PSR ¶¶ 81-86.) Martin was not arrested for the instant offense until December 16, 2005 and he was sentenced on April 18, 2007, well after both state sentences had been discharged.

Further, even if Martin's prior sentences had been undischarged at the time of sentencing, a discretionary adjustment pursuant to Section 5K2.23 would not have been authorized because his prior offenses were not "the basis for an increase in the offense level for the instant offense." In Martin's plea agreement, he stipulated that the instant offense involved at least 1.5 kilograms of cocaine base and that his adjusted offense level was 40, which carried a range of imprisonment of 360 months to life, assuming that his Criminal History Category was VI. (Plea Agmt. ¶ 2.)[9] The Presentence Investigation Report prepared for Martin's sentencing stated that the offenses underlying Martin's prior convictions in Rhode Island (involving 132.57 grams of cocaine) and South Carolina (involving 16 grams of crack cocaine) were not assigned criminal history points because those offenses were "part of the instant

_____

[9] At the sentencing hearing, duBoulay successfully argued that Martin's Criminal History Category should be Category I, not Category VI. (Sentencing Tr. at 3, 10-11.) This lowered the applicable Guidelines range to 292-365 months in custody. (*Id.* at 11, 20.)

offense." (PSR ¶¶ 82-86.) Nevertheless, at the sentencing

hearing, the prosecutor explained:

> The offense level in the case doesn't rely
> or refer at all to his prior convictions,
> and indeed, [Martin is] getting something of
> a break, I suppose, because all of his prior
> convictions are not counted in his criminal
> history category. So he's getting a break
> in his criminal history, and his prior
> convictions weren't used specifically to
> bump up his offense level.

(Sentencing Tr. at 12.) Thus, because Martin's prior offenses

were not "the basis for an increase in the offense level for the

instant offense," he would not have been entitled to an

adjustment under Section 5G1.3(b) even if his prior terms of

imprisonment had been undischarged at the time of sentencing,

and as a result, a discretionary downward adjustment pursuant to

Section 5K2.23 was not appropriate. Accordingly, because

duBoulay would have been unsuccessful in raising these issues on

appeal, his failure to do so was not objectively unreasonable,

nor did it result in prejudice to Martin.

Moreover, even assuming, *arguendo*, that Martin's prior

convictions had been the basis for an increase in the offense

level for the instant offense, the district court did not err in

refusing to exercise its discretion to adjust downward Martin's

sentence pursuant to Section 5K2.23, and duBoulay's decision not

to challenge the sentence was neither unreasonable nor

prejudicial, and thus did not constitute ineffective assistance

24

of counsel.  At the sentencing hearing, duBoulay made a final request that the court give Martin credit for the 30 months he served in custody for his South Carolina felony conviction, which was the basis for the Prior Felony Information and triggered the application of the 20-year mandatory minimum. (*See* Sentencing Tr. at 20.)  In response, Judge Trager made it clear that the 240-month sentence imposed – which was already substantially below the Guidelines range of 292 to 365 months – was the lowest sentence he would consider and that if he were to give Martin credit for time already served, he would begin calculating Martin's sentence within the Guidelines range and Martin would end up with a longer sentence.  (*See id.*)[10]  Martin therefore has not carried his burden under the prejudice prong of *Strickland* of establishing that the court, in its discretion,

---

[10]   The relevant portion of the sentencing transcript reads as follows:

> MR. DUBOULAY:  [. . .]  And lastly, Judge, I would ask if you could state in the probation report that [Martin] be given credit for the 30 months that he did on the underlying charges that makes for a predicate felony on this case.

> THE COURT:  What do you mean credit? You mean less than the 20 years?

> MR. DUBOULAY:  Be applied against the sentence.

> THE COURT:  No.

> MR. HARRISON:  Thank you, Judge.

> THE COURT:  Well, if you want to play that game, I'll start with the 292 [months] and I'll give you the credit, and I think you'll come out worse.

(Sentencing Tr. at 20.)

would have imposed anything less than the sentence Martin
received.

### ii. DuBoulay's Purported Failure to Investigate Martin's Prior Conviction, Challenge the Prior Felony Information, or Appeal Martin's Enhanced Sentence Based On His Prior Conviction

Martin asserts that duBoulay was ineffective for (1)
failing to investigate or challenge the document relied on by
the government as the basis for the Prior Felony Information,
which was used to enhance Martin's sentence pursuant to 21
U.S.C. §§ 841(b)(1)(A) and 851, because the document did not
specify which subsection of the relevant law Martin was
convicted under; and (2) failing to challenge or appeal the
enhancement of Martin's sentence, pursuant to 21 U.S.C.
§ 841(b)(1)(A), on the ground that Martin's prior conviction was
for a misdemeanor drug offense, and not a felony. (*See* Pet. at
14; Pet'r First Mot. to Amend at 3-5; Pet'r Traverse at 8-12;
Pet'r Third Mot. to Amend at 3-4.) These claims are meritless
because Martin's prior conviction was unequivocally for a felony
drug offense.

On July 10, 2006, Martin pled guilty in federal court
to distribution of at least 1.5 kilograms of cocaine base, in
violation of 21 U.S.C. § 841(b)(1)(A)(iii), a crime that
generally carries a mandatory minimum sentence of no less than

10 years' imprisonment.  (*See* Plea Tr. at 15-18; Plea Agmt.)[11]

Where a defendant has a "prior conviction for a felony drug

offense," the statute provides for an enhanced mandatory minimum

sentence of 20 years' imprisonment.  21 U.S.C.

§ 841(b)(1)(A)(iii).  Title 21 U.S.C. § 851 provides that a

defendant may be "sentenced to increased punishment by reason of

one or more prior convictions" only if the government first

files an information that states in writing the prior

convictions to be relied upon.  Here, the Prior Felony

Information filed by the government on July 7, 2006 expressly

identifies Martin's prior conviction in South Carolina state

court as the basis for Martin's enhanced mandatory minimum

sentence.  (*See* Prior Felony Information at 1.)  As support for

the Prior Felony Information, the government provided a

---

[11] Pursuant to his plea agreement, Martin stipulated to a drug quantity of 1.5 kilograms of cocaine base.  (Plea Agmt. ¶ 2.)  At Martin's plea hearing, the prosecutor noted - and Martin confirmed - that he was "stipulating to the guidelines calculation that the government has in the plea agreement, to the facts supporting it, which includes that his sentence is going to be calculated on a quantity of 1.5 kilograms of cocaine base, waiving any right to a jury trial in connection with that." (Plea Tr. at 14-15.)  During the plea allocution, the prosecutor further stated that if the case were to proceed to trial, the government would prove that Martin had conspired to distribute more than 1.5 kilograms of cocaine base.  (*Id.* at 16.)  In response to questions from the court, Martin confirmed that he did not disagree with any part of the government's statement and that he had nothing to add to the statement.  (*Id.* at 16-17.)  Moments later, however, the court asked Martin only whether he had distributed "more than 50 grams of cocaine base." (*Id.* at 17.)  At the time of his sentencing, the applicable threshold quantity of cocaine base for the ten-year mandatory minimum sentence to apply pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) was 50 grams.  In 2010, pursuant to the Fair Sentencing Act of 2010 ("FSA"), this quantity was increased to 280 grams.  However, as discussed below, because the FSA does not apply retroactively, Martin is still subject to the penalties under 21 U.S.C. § 841(b)(1)(A)(iii) whether he distributed 50 grams or 1.5 kilograms of cocaine base, as he allocuted during his plea.

disposition of conviction from the South Carolina court

("Disposition"), which indicates that Martin was sentenced to a

suspended term of imprisonment of seven and a half years for

violation of section 44-53-370 of the South Carolina Code of

Laws.  (*See* Pet. at 17.)

Martin argues that it was improper for the government

to rely on the Disposition to establish that his prior offense

was a felony and that duBoulay erred in failing to challenge

this document.  (*See* Pet'r First Mot. to Amend at 3-5; Pet'r

Traverse at 9-10; Pet'r Third Mot. to Amend at 3.)  In

particular, Martin asserts that because the Disposition did not

identify which subsection of Section 44-53-370 of the Code of

Laws of South Carolina Martin was convicted under, and that,

because one of the subsections described a misdemeanor, the

Disposition did not conclusively demonstrate that Martin's prior

conviction was for a felony.  (*See* Pet. at 14-15; Pet'r First

Mot. to Amend at 4-5; Pet'r Traverse at 8-10; Pet'r Third Mot.

to Amend at 3-4.)  Martin suggests that had duBoulay challenged

the documents, he would not have been subject to a 20-year

mandatory minimum term of imprisonment.

In support of his argument, Martin cites *Shepard v.*

*United States*, 544 U.S. 13 (2005), in which the Supreme Court

held that the district court could not properly determine the

"character" of the defendant's crime "by look[ing] to police

reports or complaint applications" because such documents did not define the conduct to which the defendant ultimately pled guilty and the court may not "delv[e] into particular facts disclosed by the record of conviction." *Id.* at 16-17. At issue in *Shepard* was whether the defendant's prior burglary conviction had been for entry into a building, which would constitute a "violent felony" for the purpose of a sentencing enhancement pursuant to the Armed Career Criminal Act, or merely entry into a boat or car, which would not. *See id.* Because the precise nature and elements of the defendant's crime were relevant, the district court was required to look at the terms of the charging document or plea agreement, the transcript of the plea colloquy, or other comparable records to determine whether the defendant's guilty plea necessarily admitted the elements necessary for a sentencing enhancement to apply. *Id.* at 26.

In this case, unlike in *Shepard*, the character of Martin's prior crime is not at issue.[12] Instead, the relevant

---

[12] Martin's reliance on *United States v. Bonilla*, 524 F.3d 647 (5th Cir. 2008) is similarly misplaced, (*see* Pet'r Traverse at 9-10), as the issue in *Bonilla* was whether the defendant's prior conviction was for a "crime of violence" for the purposes of applying a sentencing enhancement pursuant to U.S.S.G. § 2L1.2. Further, the cases to which Martin directs the court's attention in his most recent submission to the court are distinguishable on their facts and inapplicable to Martin's case. (*See* Case No. 08-CV-452, ECF No. 23, Letter from Jerome Martin to Judge Matsumoto, filed 10/3/2011, at 3-4.) *See Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2589 (2010) (holding that where an "aggravated felony" pursuant to the Immigration and Nationality Act is defined as a crime punishable as a felony under *federal law*, "the defendant must . . . have been *actually convicted* of a crime that is itself punishable as a felony under federal law" in order to be ineligible for discretionary cancellation of removal); *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (where the defendant had faced no possibility of imprisonment for his

inquiry is whether Martin's prior conviction was for a misdemeanor or a felony. A "felony drug offense" is defined under federal law as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44). A state drug offense punishable by imprisonment for more than one year qualifies as a "felony drug offense" whether or not it is classified as a felony or a misdemeanor under state law. *Burgess v. United States*, 553 U.S. 124, 126-27 (2008).

Here, the Disposition relied on by the government in support of the Prior Felony Information demonstrates that Martin's prior conviction in South Carolina was for a felony drug offense. It clearly states that Martin pled guilty to "conspiracy to violate [South Carolina] Narcotics Laws in violation of § 44-53-370 of the S.C. Code of Laws." (Pet. at 17.) Even though the Disposition does not state the precise subsection of the South Carolina law that Martin was convicted

prior state conviction, the court held that the prior conviction could not trigger a sentencing enhancement even though the same crime under federal law would have been a felony punishable by imprisonment for more than one year). Martin's sentence was properly enhanced because he actually had been convicted of a drug-related offense and sentenced to seven and a half years' imprisonment, albeit with the balance suspended, a punishment available only for a felony.

of violating, it does state that Martin was sentenced to a term
of imprisonment of seven and a half years, "the balance
suspended with probation for 30 months." (*Id.*) This sentence
no doubt satisfies the definition of a "felony drug offense"
under 21 U.S.C. § 802(44). By asserting that his prior offense
was not a felony, Martin in essence is arguing that it was not
"punishable by imprisonment for more than one year." Notably,
however, Martin neither contests the validity of his prior
conviction, nor denies that he was sentenced to a term of
imprisonment of seven and a half years, nor refutes that his
prior offense was drug-related. Thus, duBoulay's decision not
to investigate Martin's prior conviction, challenge the Prior
Felony Information, or appeal Martin's enhanced sentence on the
ground that Martin's South Carolina conviction was a
misdemeanor, was not unreasonable and did not constitute
ineffective representation.[13]

---

[13] Further, Martin stipulated in his plea agreement that he had a prior
conviction for a felony drug offense, (Plea Agmt. ¶ 2), and during his plea
hearing, Martin acknowledged that he had read the plea agreement and
understood that he had stipulated to a prior drug felony conviction for the
purpose of the Prior Felony Information, (Plea Tr. at 15). A stipulation in
a plea agreement "may be relied upon in finding facts relevant to sentencing
so long as the stipulation is knowing and voluntary and the district court
considers any other relevant information presented to it, including the
Presentence Investigation Report, before imposing sentence." *United States
v. Perez Dominguez*, 393 F. App'x 773, 778 (2d Cir. 2010) (quoting *United
States v. Granik*, 386 F.3d 404, 412-14 (2d Cir. 2004)) (internal quotation
marks and brackets omitted); *see, e.g.*, *Mims v. United States*, No. 08-CV-
1400, 2009 U.S. Dist. LEXIS 58391, at *9-13 (D. Conn. July 9, 2009) (finding
that petitioner is bound by knowing and voluntary stipulation in plea
agreement regarding his prior convictions and his status as an armed career
criminal). This is so because "[i]f defendants are not held to their factual
stipulations . . . the government has no reason to make concessions in

Moreover, even if the omission of the exact subsection Martin was convicted under were improper, Martin was not prejudiced by duBoulay's decision not to seek redress for such an error. To succeed on his ineffective assistance of counsel claim, Martin must prove that, had duBoulay investigated Martin's prior conviction or challenged its sufficiency as the basis for a sentencing enhancement, there is a reasonable probability that the sentence imposed would have been different. *Strickland*, 466 U.S. at 694; *see also Ramirez*, 2011 U.S. Dist. LEXIS 48783, at *22. Had duBoulay challenged the government's reliance on the Disposition, however, the government likely would have corrected its purported error in omitting the subsection by providing additional supporting materials supporting the felony conviction. *See, e.g.*, *United States v. Flowers*, 464 F.3d 1127, 1131 (10th Cir. 2006) (finding no ineffective assistance of counsel in part because an objection to the faulty service of a prior offense information "would probably have resulted only in a continuance and proper service"). There is no question that Martin's prior South Carolina conviction was for a drug felony, and the government

---

exchange for them." *Granik*, 386 F.3d at 412-13. Martin now argues, however, that he only agreed to this factual stipulation because duBoulay advised him to do so. (*See* Pet'r First Mot. to Amend at 5, 6.) Nevertheless, because the Disposition demonstrates unequivocally that Martin's South Carolina conviction was for a felony drug offense, duBoulay's advice that Martin should stipulate to this prior felony in the plea agreement was not unreasonable.

readily could have identified the specific subsection of Section 44-53-370 pursuant to which Martin was sentenced. Martin would not have benefitted from a challenge, as he ultimately would have been subject to the same mandatory minimum term of imprisonment. Thus, Martin was not prejudiced by duBoulay's actions and, consequently, his ineffective assistance of counsel claim fails.

### E. District Court's Alleged Failure to Follow the Statutory Requirements of 21 U.S.C. § 851(b)

Martin's third motion to amend his *habeas* petition alleges that the sentencing court failed to satisfy the requirements of 21 U.S.C. § 851(b) ("Section 851(b)") by (i) failing to ask Martin whether he affirms or denies the prior felony conviction, as alleged in the Prior Felony Information, and (ii) failing to inform Martin that any challenge to his prior conviction not made before his sentence was imposed may not thereafter be raised to attack the instant sentence.[14]

"[A] claim based on a failure to comply with § 851 is subject to waiver or procedural default." *Sapia v. United*

_____

[14] Title 21 U.S.C. § 851(b) provides:

> If the United States attorney files an information under [21 U.S.C. § 851(a)], the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

33

*States*, 433 F.3d 212, 217 (2d Cir. 2005). Because Martin did
not raise this issue in a direct appeal, he has procedurally
forfeited his claim regarding the court's alleged Section 851
defect unless he can show "(1) cause for failing to raise the
issue, and prejudice resulting therefrom; or (2) actual
innocence." *Rosario v. United States*, 164 F.3d 729, 732 (2d
Cir. 1998) (internal citations and quotation marks omitted),
*cert. denied*, 527 U.S. 1012 (1999). Specifically, Martin can
raise his claim only to the extent that there has been a change
in the law or the claim was "not raised at all on direct appeal
due to ineffective assistance of counsel." *Underwood v. United
States*, 15 F.3d 16, 18 (2d Cir. 1993) (quoting *Barton v. United
States*, 791 F.2d 265, 267 (2d Cir. 1986) (per curiam)).

In his third motion to amend, Martin did not offer any
reason for his failure to appeal the sentencing court's alleged
failure to comply with Section 851. Nevertheless, because the
court must construe Martin's motion liberally, and because he
has previously alleged that his counsel provided ineffective
assistance, the court will construe Martin's motion as asserting
that his procedural default should be excused because of
duBoulay's purportedly ineffective representation. Thus, the
relevant inquiry is whether duBoulay's performance "fell below
an objective standard of reasonableness" and whether Martin "was
prejudiced by counsel's deficient acts or omissions." *Johnson*

*v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (quoting
*Strickland*, 466 U.S. at 687-90); *see also Sapia*, 433 F.3d at 218
(noting that when considering a procedural default purportedly
caused by ineffective assistance of counsel, the "prejudice"
prong under the procedural default inquiry is the same as the
"prejudice" prong under *Strickland*) (citing *Prou v. United
States*, 199 F.3d 37, 49 (1st Cir. 1999)).  For the reasons
explained below, even assuming, *arguendo*, that duBoulay's
representation was objectively unreasonable, Martin cannot show
that any purported failure by the sentencing court to follow the
procedures required by Section 851(b) prejudiced him.

On July 7, 2006, three days before Martin's plea, the
government electronically filed an information with the district
court, as required by 21 U.S.C. § 851(a)(1), identifying
Martin's prior felony drug conviction in South Carolina as the
prior conviction upon which the court was to rely in order to
enhance Martin's sentence.  (*See* Prior Felony Information, filed
7/7/2006.)  On July 10, 2006, at the plea hearing, the
prosecutor stated on the record that he had served defense
counsel with the Prior Felony Information.  (Plea Tr. at 12.)
Thus, Martin had sufficient notice of the district court's
intention to enhance his sentence based on this prior
conviction.

On July 10, 2006, Martin pled guilty pursuant to a plea agreement that stated at paragraph 2, "[t]he defendant stipulates that he has a prior conviction for a felony drug offense as defined in 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C. § 851(a)(1)." (Plea Agmt. ¶ 2.) At the plea hearing, the court confirmed that Martin had read the plea agreement, discussed it with his attorney, and signed it. (Plea Tr. at 10-11.)

During the plea hearing, the prosecutor informed Martin that the "minimum term of imprisonment is 20 years in jail," and further explained that "these are enhanced penalties because of a prior offense information the government has filed, filed it Friday. I've given counsel copies. I believe I sent the court a copy. [Martin] has a prior felony narcotics conviction." (*Id.* at 11-12.) In addition, the prosecutor stated that "[i]f [Martin] did not have that prior felony information, the minimum term of imprisonment would be ten [years] instead of 20. It raises the minimum term." (*Id.* at 12.) Moments later, the court confirmed that Martin had, in fact, stipulated to the prior felony conviction:

> MR. HARRISON: [. . .] In addition, he's also stipulated in [the plea agreement] which I talked about before that he does in fact have a prior narcotics felony in relation to the prior offense information the government filed.
>
> THE COURT: Is that correct, Mr. Martin?

THE DEFENDANT:  Yes, sir.

(*Id.* at 15.)

During Martin's sentencing hearing on April 18, 2007, duBoulay acknowledged that Martin had a "prior felony for drugs." (Sentencing Tr. at 10.)  Further, in arguing for a sentence of the mandatory minimum, which was below the applicable Guidelines range, duBoulay stated, "he's getting the mandatory minimum because of that prior drug conviction.  Just the way the guidelines are construed, I mean, it allows him to really get a lot of time." (*Id.*)  The sentencing court did not specifically inform Martin that any challenge to his prior conviction not raised before sentencing on the instant offense could not be the basis for a future attack to the instant sentence, as required by Section 851(b).

Based on the Second Circuit's recent decision in *United States v. Espinal*, 634 F.3d 655 (2d Cir. 2011), the court acknowledges that it may be prejudicial error for a sentencing court not to advise a defendant of his opportunity to challenge a prior conviction that forms the basis for a sentencing enhancement pursuant to Section 851.  In *Espinal*, the district court failed to warn the defendant of the effect of failing to challenge his prior felony information, and as a result, the defendant made the "unusual choice not to affirm or deny the allegations in the information" and not to file any written

objections.  *Id.* at 666.  The Second Circuit found that "the potential prejudice from [the court's] failure is clear" because had the defendant filed a written response, it would have triggered the government's obligation to provide proof of the defendant's prior conviction beyond a reasonable doubt.  *Id.* Similarly, in *United States v. Cevallos*, 538 F.2d 1122 (5th Cir. 1976), the Fifth Circuit vacated the petitioner's sentence where "the district court at sentencing never asked petitioner whether he had been previously convicted as alleged in the information and never informed him that he could not challenge the prior conviction after sentencing."  *Id.* at 1126.  The court noted that such a complete failure to abide by the statutory requirements of Section 851(b) "can result in very real prejudice to a defendant who learns only after he attempts to challenge the prior conviction that that conviction has become unassailable."  *Id.* at 1128.  Notably, unlike the instant case, the district court in *Cevallos* had never established whether the petitioner was actually the individual convicted of the offense referred to in the prior felony information.  *Id.* at 1128 n.13.

The circumstances of the instant case are distinguishable.  Here, Martin was informed that he was subject to a 20-year mandatory minimum sentence as a result of the Prior Felony Information, which was based on his prior conviction for a felony drug offense.  (Plea Tr. at 11-12.)  Martin also

confirmed both in his signed plea agreement and on the record
under oath that he did, in fact, have a prior felony narcotics
conviction.  (*See* Plea Agmt. ¶ 2; Plea Tr. at 15.)  Moreover,
during the sentencing hearing, in which Martin participated,
Martin's attorney acknowledged Martin's prior felony drug
conviction, as well as the consequences of that conviction for
Martin's sentence for the instant offense.  (*See* Sentencing Tr.
at 10.)

    Although the Second Circuit in *Espinal* declined to
articulate whether the standard of review is plain or harmless
error, it did conclude that "there is no reason why non-
prejudicial errors in complying with the procedural requirements
of § 851 should require reversal."  *Espinal*, 634 F.3d at 665.
Indeed, the Second Circuit stated that a court's "[f]ailure to
adhere to the letter of § 851's procedures does not
automatically invalidate the resulting sentence."  *Id.* (citing
cases in sister circuits concluding that Section 851(b)
procedural deficiencies are subject to harmless error review).
This determination is consistent with the Second Circuit's
opinion in *United States v. Harwood*, 998 F.2d 91 (2d Cir. 1993),
in which the court concluded that "the trial judge's sentencing
ritual . . . complied with the requirements of § 851(b)" where
the defendant – like Martin - had sufficient notice of the prior
felony information, failed to raise any objection, and stated

39

through counsel that he did not dispute the conviction. *Id.* at

101; *see also United States v. James*, 642 F.3d 1333, 1342-43

(11th Cir. 2011) (finding that "[a]ny error in not specifically

asking defendant whether he affirmed or denied the convictions

was harmless error" where the prior convictions were clearly

delineated in the Section 851 notice and the pre-sentence

investigation report and the defendant confirmed that he

understood that his sentence was being enhanced as a result of

his prior convictions).

Even assuming that the sentencing court failed to

follow the precise procedures required by Section 851(b), such

an error is not prejudicial, as Martin has not set forth any

grounds on which he would have challenged his prior conviction.

*See United States v. Burdine*, No. 5:05-CR-26, 2009 U.S. Dist

LEXIS 45376, at *18 (N.D.N.Y. May 29, 2009). Further, it is

also noteworthy that pursuant to Section 851(e), Martin could

not have attacked the validity of his prior conviction even had

he wished to do so because he was convicted of the South

Carolina drug offense more than five years before the date of

the Prior Felony Information.[15]  *See United States v. Harding*,

308 F. App'x 531, 532 (2d Cir. 2009) (upholding enhanced

---

[15] Title 21 U.S.C.§ 851(e) provides that "[n]o person who stands convicted of
an offense under this part may challenge the validity of any prior conviction
alleged under this section which occurred more than five years before the
date of the information alleging such prior conviction."  Martin was
sentenced for his South Carolina offense on July 8, 1998, eight years before
the Prior Felony Information was filed on July 7, 2006.

sentence where court failed specifically to inform the defendant of his right to challenge his prior conviction because "any Section 851 error in this case is harmless" where the enhancement was based on "a single, unchallengeable previous conviction" that was more than five years old); *United States v. Ramsey*, 655 F.2d 398, 401 (D.C. Cir. 1981) (denying motion to correct allegedly illegal sentence, even though district judge failed to inform appellant that he would not be able to challenge the prior conviction, because appellant admitted both in writing and on the record that he had been convicted of a prior narcotics felony, the prior conviction occurred more than five years earlier, and appellant could not have attacked – and never attempted to attack – the prior conviction); *United States v. Forney*, No. 10-4159, 2011 U.S. App. LEXIS 16173, at *4-5 (4th Cir. Aug. 4, 2011) (finding the district court's failure to inquire whether defendant affirmed or denied his previous felony drug conviction to be harmless error because defendant "would have been unable to challenge the validity of his previous convictions because the convictions occurred more than five years before the filing of the information"); *United States v. Henderson*, 613 F.3d 1177, 1185 (8th Cir. 2010) (finding district court's failure to inquire about convictions that were more than five years old to be harmless error), *cert. denied*, 131 S. Ct.

2151 (2011); *United States v. Baugham*, 613 F.3d 291, 296 (D.C. Cir. 2010), *cert. denied*, 131 S. Ct. 1510 (2011) (same).

Accordingly, as Martin could no longer challenge his prior felony conviction, he was not prejudiced by the sentencing court's failure to specifically advise him that he must challenge that conviction prior to sentencing. Thus, although Martin has not framed his challenge as an ineffective assistance of counsel claim, such a claim would fail because Martin was not prejudiced by counsel's failure to challenge or appeal the sentencing court's purported failure to adhere strictly to the requirements of Section 851, and his claim is therefore barred.

## II. Resentencing Pursuant to the Fair Sentencing Act of 2010

Martin's second motion to amend his *habeas* petition, filed on August 16, 2010, seeks a reduction in sentence based on the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372 (2010) (codified as amended in scattered sections of 21 U.S.C. and 28 U.S.C.) ("FSA"). (*See* Pet'r Second Mot. to Amend.) As relevant to Martin, the FSA increased from 50 grams to 280 grams the threshold amount of cocaine base required to trigger the 20-year mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1) for defendants with a prior conviction for a felony drug offense. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2011). Further, pursuant to the FSA and the Sentencing Commission's authority under 28 U.S.C. § 994(o), the Sentencing Commission

promulgated Amendment 750, which amended the Guidelines applicable to crack cocaine offenses. *See* U.S.S.G., 2010 Supp. to App. C, Amendment 750 (effective Nov. 1, 2010) ("Guideline Amendment 750"). As of November 1, 2011, Guideline Amendment 750 has retroactive effect. *See* U.S.S.G. § 1B1.10(c) (2011) (listing Guideline Amendment 750 as an amendment "covered" by the policy statement regarding reductions in term of imprisonment as a result of amended guideline range). As relevant to the instant case, Guideline Amendment 750 amended the drug quantity table in U.S.S.G. § 2D1.1(c) such that the amended base offense level for an offense involving at least 840 grams but less than 2.8 kilograms of crack cocaine is 34. U.S.S.G. § 2D1.1(c)(3) (2011).

As an initial matter, the relief Martin seeks is beyond the scope of the instant motion. A prisoner in federal custody may challenge his sentence by *habeas* petition pursuant to 28 U.S.C. § 2255 on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). In cases not involving a constitutional or statutory violation or lack of jurisdiction, relief is only available when the claimed error constitutes "'a

fundamental defect which inherently results in a complete miscarriage of justice' and presents 'exceptional circumstances when the need for the remedy afforded by the writ of habeas corpus is apparent.'" *Nnebe v. United States*, 534 F.3d 87, 90 (2d Cir. 2008) (quoting *Hill*, 368 U.S. at 428); *accord Graziano v. United States*, 83 F.3d 587, 589-90 (2d Cir. 1996). Martin's second motion to amend his petition does not assert any constitutional or jurisdictional infirmities in his original sentence or allege that his sentence suffered from a "fundamental defect which inherently results in a complete miscarriage of justice." Accordingly, Martin's *habeas* petition must be dismissed.

Nevertheless, because Martin is proceeding *pro se*, the court will broadly construe his motion as one for a modification of his term of imprisonment pursuant to 18 U.S.C. § 3582(c). *See United States v. Rios-Paz*, 808 F. Supp. 206, 207 (E.D.N.Y. 1992) (treating Section 2255 motion seeking reduction of sentence based on amendment to Sentencing Guidelines as a motion pursuant to 18 U.S.C. § 3582(c)); *Pichardo v. United States*, Nos. 08-CV-8805, 06-CR-964, 2009 U.S. Dist. LEXIS 9633, at *6 (S.D.N.Y. Feb. 10, 2009) (same). Pursuant to 18 U.S.C. § 3582(c)(2), a court may modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently

44

been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Martin is not eligible for relief under 28 U.S.C. § 3582(c)(2) because his sentence was not "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," *id.*, but instead was based on the statutory mandatory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(A).[16] *See United States v. Williams*, 551 F.3d 182, 185-86 (2d Cir. 2009) (denying motion for modification of sentence where the sentence was based on a mandatory minimum pursuant to 21 U.S.C. § 841(b)(1)); *United States v. Rivas*, No. 04-CR-0802-02, 2011 U.S. Dist. LEXIS 96253, at *1-2 (S.D.N.Y. Aug. 22, 2011) (same); *see also United States v. Torres*, 391 F. App'x 903, 905 (2d Cir. 2010) (denying motion under § 3582(c)(2) where defendant had been sentenced to the mandatory minimum,

---

[16] At the time of Martin's sentencing, the highest base offense level prescribed by the drug quantity table – Level 38 – applied to offenses involving 1.5 kilograms or more of cocaine base. U.S.S.G. § 2D1.1(c)(1) (2006). (*See also* Plea Agmt. ¶ 2.) Martin received a two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) for possession of a firearm, and a four-level increase pursuant to U.S.S.G. § 3B1.1(a) for his role as an organizer or leader in the offense. (*Id.*) After a three-level reduction for acceptance of responsibility and a one-level reduction for a global disposition, Martin's adjusted offense level was 40. (*Id.*) Although the plea agreement estimated that Martin's Criminal History Category was VI, duBoulay successfully argued at sentencing that Category I was more appropriate. (Sentencing Tr. at 3, 10-11.) Thus, with an offense level of 40 and a Criminal History Category of I, Martin's applicable Guidelines range was 292-365 months' imprisonment. (*Id.* at 11, 20.) In imposing sentence, however, the court varied below the Guidelines range and sentenced Martin to the mandatory minimum term of 240 months' imprisonment. (Sentencing Tr. at 18.)

notwithstanding a retroactive amendment to Sentencing Guidelines relating to crack cocaine offenses); *United States v. Burkett*, No. 03-CR-909, 2011 U.S. Dist. LEXIS 20920, at *4-5 (E.D.N.Y. Mar. 2, 2011) (same). This conclusion is supported by the commentary to U.S.S.G. § 1B1.10, which provides that "[a] reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) and is not consistent with this policy statement . . . [if] the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (e.g., *a statutory minimum term of imprisonment*)." U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added).

Further, although the amended Guidelines would lower the base offense level for Martin's offense, the statutory mandatory minimum term of 240 months' imprisonment would remain in effect and serve as the amended Guidelines range.[17] *See*

---

[17] Pursuant to U.S.S.G. § 1B1.10, "[i]n determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and [U.S.S.G. § 1B1.10] is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendments to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). If the amended Guidelines had been in effect when Martin was sentenced, after the adjustments for possessing a firearm, his role in the offense, acceptance of responsibility, and the global disposition, Martin's adjusted offense level would have been 36. With a Criminal History Category of I, an offense level of 36 carries a Guidelines range of 188 to 235 months' imprisonment. The Guidelines specifically provide, however, that when a mandatory minimum sentence exceeds the Guidelines range, "the statutorily required minimum sentence shall be the guideline sentence." U.S.S.G. § 5G1.1(b). Thus, pursuant to the amended Guidelines, Martin's Guidelines range would be 240 months' imprisonment.

U.S.S.G. § 5G1.1(b) ("Where a statutorily required minimum
sentence is greater than the maximum of the applicable guideline
range, the statutorily required minimum sentence shall be the
guideline sentence."). Pursuant to U.S.S.G. § 1B1.10(b)(2)(A),
"the court shall not reduce the defendant's term of imprisonment
under 18 U.S.C. § 3582(c)(2) and [U.S.S.G. § 1B1.10] to a term
that is less than the minimum of the amended guideline range . .
. ." Accordingly, because the court may not reduce Martin's
sentence to a term of imprisonment less than the statutory
mandatory minimum of 240 months, which is the sentence
originally imposed, Martin is not eligible for a modification of
sentence pursuant to 18 U.S.C. § 3582(c)(2).

Moreover, Martin may not benefit from the FSA's
increase in the threshold amount of cocaine base required to
trigger the 20-year mandatory minimum because the statute itself
does not apply retroactively. *United States v. Diaz*, 627 F.3d
930, 931 (2d Cir. 2010) (per curiam); *see also United States v.
Gadsden*, No. 10-1889, 2011 U.S. App. LEXIS 19939 (2d Cir. N.Y.
Sept. 29, 2011) ("[W]e have expressly held that the FSA does not
apply retroactively to crimes committed prior to its
enactment."); *United States v. Glover*, 398 F. App'x 677, 680 (2d
Cir. 2010) (holding that mandatory minimum in effect at the time
of the crime applies, despite subsequent congressional
legislation increasing the quantity of crack cocaine required to

warrant the mandatory sentence, because the FSA does not apply retroactively); *United States v. Acoff*, 634 F.3d 200, 202 (2d Cir. 2011) (per curiam) (same).[18]  The FSA "contains no express statement that it is intended to have retroactive effect nor can we infer such intent from its language."  *Glover*, 398 F. App'x at 680; *see* 1 U.S.C. § 109 ("The repeal of any statute shall not have the effect to release or extinguish any penalty . . . incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty").  As a result, the FSA cannot be applied to reduce Martin's sentence

---

[18] While inapplicable to a defendant like Martin, who was sentenced before the FSA became effective on August 3, 2010, the court notes that some courts have taken the position that the FSA does apply to defendants who were sentenced after August 3, 2010, regardless of when the offense was committed.  *See, e.g.*, *United States v. Jacobs*, No. 3:08-CR-0211, 2011 U.S. Dist. LEXIS 126620, at *11 (D. Conn. Nov. 2, 2011) (finding the FSA applies to a defendant sentenced after August 3, 2010); *United States v. Douglas*, 644 F.3d 39 (1st Cir. 2011) (same); *United States v. Rojas*, 645 F.3d 1234, 1236 (11th Cir. 2011), *vacated and rehearing en banc granted by* 2011 U.S. Dist. LEXIS 20135 (11th Cir. Oct. 4, 2011) (same); *United States v. Dixon*, 648 F.3d 195, 203 (3d Cir. 2011) (same).  *But see United States v. Tickles*, Nos. 10-30852, 10-31085, 2011 U.S. App. LEXIS 21147, at *4 (5th Cir. 2011) (holding that FSA is not retroactive for defendants sentenced after August 3, 2010); *United States v. Fisher*, 635 F.3d 336, 338, 340 (7th Cir. 2011) (same); *United States v. Sidney*, 648 F.3d 904, 908 (8th Cir. 2011) (same).  In any event, because Martin was both convicted and sentenced prior to August 3, 2010, the FSA does not affect him.  *See United States v. Deas*, Nos. 09-4675-cr, 09-5295-cr, 2011 U.S. App. LEXIS 19950, at *6 (2d Cir. Sept. 30, 2011) ("[E]ven assuming the Act applies to sentences imposed on or after its enactment on August 3, 2010, [petitioner's] sentence would be unaffected because he was sentenced in December 2009." (citing *Rojas*, 645 F.3d at 1234)).

because he committed the instant offense and was convicted and sentenced before the FSA was enacted.[19]

Finally, even if the FSA were applied retroactively, it would be of no benefit to Martin. He stipulated in his plea agreement that "his sentence shall be calculated on a drug type and quantity of at least 1.5 kilograms of cocaine base," which is clearly in excess of the increased 280-gram threshold quantity of cocaine base required for the 20-year mandatory minimum sentence to apply. (*See* Plea Agmt. ¶ 2; *see also* Plea

---

[19] Martin argues that the FSA must be applied retroactively here because it alters the meaning of a criminal statute "such that the defendant stands convicted for conduct that may no longer be illegal." (Pet'r Second Mot. to Amend at 3.) This is not correct. Indeed, the cases Martin cites in support of his argument relate only to when a new rule of criminal law is announced by the Supreme Court, and not by Congress. (*See e.g.*, *Santana-Madera v. United States*, 260 F.3d 133, 138 (2d Cir. 2001) ("Whether or not a new rule of law *announced by the Supreme Court* is to be applied retroactively in criminal cases on habeas review for the first time depends largely on whether the rule is substantive or procedural." (emphasis added)); *Bousley v. United States*, 523 U.S. 614, 620 (1998) ("*[D]ecisions of this Court* holding that a substantive federal criminal statute does not reach certain conduct . . . necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal" (emphasis added; citations and internal quotation marks omitted)); *United States v. Mandanici*, 205 F.3d 519, 521 (2d Cir. 2000) (considering whether a rule of law announced by a recent Supreme Court decision applies retroactively on collateral review); *Bilzerian v. United States*, 127 F.3d 237, 240 (2d Cir. 1997) (same); *Monsanto v. United States*, 143 F. Supp. 2d 273, 277 (S.D.N.Y. 2001) (same). The concern in those cases is that a defendant will stand convicted of an "act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, 346 (1974). As the Second Circuit has stated, the same constitutional concerns do not apply to a new rule announced by Congress because "[i]t is not irrational for Congress to impose a penalty on those who committed their offenses at a time when they knew or should have known the severity of the applicable penalty, even while reducing the penalty as to future offenders." *Acoff*, 634 F.3d at 202. Further, although Martin argues that "his current conviction was pending appeal at the time that Congress enacted" the FSA, (Pet'r Second Mot. to Amend at 5), in fact the only case pending was the instant *habeas corpus* action. Nevertheless, even if Martin had not yet exhausted his appeals when the FSA came into force, it still would not apply retroactively to alter his sentence. *See Acoff*, 634 F.3d at 202.

Tr. at 15, 16.)  Accordingly, a reduction of Martin's sentence in light of the FSA and the amended Guidelines is not warranted.

## III. Motions to Expand the Record, to Hold an Evidentiary Hearing, and to Appoint Counsel

Martin asks the court to expand the record to include records of a purported telephone conversation between Martin and duBoulay on February 25, 2008, to hold an evidentiary hearing, and to appoint counsel to represent him.

Rule 7(a) of the Rules Governing Section 2255 Proceedings provides, "[i]f the motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion."  Similarly, Rule 8(c) of the Rules Governing Section 2255 Proceedings provides, "[i]f the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  If a hearing is held, "the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed."  Rules Governing Section 2255 Proceedings 8(c).  No evidentiary hearing is necessary, however, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."  28 U.S.C. § 2255(b).  *See United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970) (a hearing is not required "where

the allegations are insufficient in law, undisputed, immaterial, vague, palpably false or patently frivolous"). Because Martin's motion for *habeas corpus* relief pursuant to 28 U.S.C. § 2255 is dismissed in its entirety, he is not entitled to further expansion of the record, an evidentiary hearing, or appointed counsel.

Nor is Martin entitled to discovery pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Pizzuti v. United States*, Nos. 10 Civ. 199, 10 Civ. 2585, 02 Cr. 1237, 2011 U.S. Dist. LEXIS 93142, at *23 (S.D.N.Y. Aug. 18, 2011) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). Indeed, Rule 6(a) authorizes a district court to order discovery only "for good cause." *See Lewal v. United States*, No. 97-2248, 1998 U.S. App. LEXIS 16439, at *4 (2d Cir. June 9, 1998) ("Rule 6(a) of the Rules Governing Section 2255 Proceedings . . . provides that a § 2255 petitioner is entitled to undertake discovery only when 'the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.'"). In order to show "good cause," a petitioner must present "specific allegations" that give the court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to

relief." *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *accord Gonzalez v. Bennett*, No. 00 Civ. 8401, 2001 U.S. Dist. LEXIS 19798, at *11 (S.D.N.Y. Nov. 30, 2001). A court may deny a petitioner's request for discovery "where the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition." *Hirschfeld v. Comm'r of the Div. of Parole*, 215 F.R.D. 464, 465 (S.D.N.Y. 2003) (citing *Gonzalez*, 2001 U.S. Dist. LEXIS 19798, at *12).

Martin alleges that during a telephone conversation on February 25, 2008, duBoulay admitted to Martin that he had not travelled to South Carolina to investigate whether Martin's prior conviction was a felony, as alleged in the Prior Felony Information filed by the government. (Pet'r Mot. to Expand at 2, 5.) Martin argues that he is entitled to discovery of the phone toll records and tapes because this admission is relevant to proving that duBoulay's assistance was ineffective. (*Id.*) Martin has pointed to no evidence that, if true, would support his allegations of ineffective assistance of counsel. Even if duBoulay had failed to travel to South Carolina or to conduct what Martin defines as a complete investigation of Martin's prior conviction, such failure would not establish that duBoulay's assistance was ineffective. On the contrary, as discussed at length above, Martin's conviction in South Carolina

to a term of imprisonment of seven and a half years demonstrates by its own terms that Martin's prior conviction was for a felony.  Accordingly, the fact that duBoulay failed to inquire further did not affect Martin's sentence, and the telephone records he seeks would not support his *habeas corpus* petition.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

## CONCLUSION

For the foregoing reasons, (i) Martin's motions to amend his petition are granted; (ii) Martin's motion for *habeas corpus* relief pursuant to 28 U.S.C. § 2255 is dismissed; (iii) Martin's motion for a sentence reduction pursuant to 28 U.S.C. § 3582(c) is denied; (iv) Martin's motion to expand the record is denied; and (v) Martin's motion to appoint counsel is denied. Because Martin has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. *See* 28 U.S.C. § 2253(c)(2). In addition, the court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 82 (1962). The Clerk of the Court is respectfully requested to enter judgment accordingly, to close the case, and to serve a copy of this Memorandum and Order upon petitioner.


SO ORDERED.

Dated: Brooklyn, New York
      November 9, 2011

                                   _____    /s/_____    _____
                                   KIYO A. MATSUMOTO
                                   United States District Judge
                                   Eastern District of New York